UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jane P. F., | Case No. 22-CV-3112 (KMM/JFD) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jane P. F. seeks judicial review of a final decision by the Defendant Acting Commissioner of Social Security, which denied her disability insurance benefits ("DIB") and supplemental security income ("SSI"). The matter is now before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 11) and Defendant's Motion for Summary Judgment (Dkt. No. 17). Plaintiff seeks reversal of the final decision denying benefits and either an award of benefits or a remand to the Social Security Administration ("SSA"). Plaintiff argues that (1) the Administrative Law Judge ("ALJ") who issued the final decision erred by not finding Plaintiff's impaired hearing to be a severe impairment; and (2) the ALJ did not account for Plaintiff's hearing, standing, and walking limitations in assessing Plaintiff's residual functional capacity ("RFC").[1] Defendant opposes Plaintiff's motion and asks the Court to affirm the final decision. As

---

[1] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1

set forth below, the Court concludes that the ALJ did not err in either respect and accordingly recommends that Plaintiff's motion be denied, the Commissioner's motion be granted, and the Commissioner's final decision be affirmed.

**I.     Background**

Plaintiff applied for DIB and SSI benefits on February 15, 2021, asserting she was disabled as of April 25, 2020[2] due to back problems, knee problems, shoulder problems, no right ear, anal fistula, bone spurs, high cholesterol, neuropathy in her hands, and a removed thyroid. (Soc. Sec. Admin. R. (hereinafter "R.") 117, 125.)[3] Plaintiff's applications were denied at the initial review and reconsideration stages.

An ALJ held a hearing, at Plaintiff's request, on December 21, 2021. (R. 29.) Plaintiff and a vocational expert testified at the hearing. (R. 29.)

Plaintiff testified that, at the time of the hearing, she was working about 20 hours a week in the cosmetics department of a Von Maur store. (R. 41.) She told her employer that she could not work more than 20 hours a week, based on alleged advice from the SSA. (R. 41.) Plaintiff testified that working more than 20 hours a week or standing more than 6 hours in an 8-hour workday would cause excruciating pain in her feet. (R. 41, 42, 43, 47.) Also, Plaintiff testified, she could not stand for more than four hours continuously. (R. 59.) Before her job at Von Maur, Plaintiff worked as a fine-jewelry associate at a Macy's store.

---

[2] Plaintiff later changed this date to April 30, 2020. (R. 35.)

[3] The SSA administrative record is filed at Dkt. No. 8. The record is consecutively paginated, and the Court cites to that pagination rather than docket number and page.

(R. 49.) In addition to foot pain, Plaintiff testified, she also experienced pain in her hands, neck, and knees. (R. 44, 45.) She lived with and cared for her father, who had physical disabilities and used a wheelchair. (R. 37, 48.)

The ALJ asked vocational expert Monica Debroweka to consider a hypothetical person of Plaintiff's age (59 years) and education, who would be limited to frequent climbing of ramps, stairs, ladders, ropes, and scaffolds. (R. 60.) Ms. Debroweka testified that such an individual could perform Plaintiff's past work as a jewelry salesperson. (R. 60.) The ALJ then asked Ms. Debroweka to add the following limitations: light level work; lifting and carrying 20 pounds occasionally and 20 pounds frequently; sitting for up to 8 hours; standing and walking for up to 8 hours; frequent handling bilaterally; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; tolerating a moderate noise environment, and needing to sit for 10 minutes after every 2 hours of standing and walking. (R. 61.) Ms. Debroweka testified that such an individual could not perform Plaintiff's past work as Plaintiff had performed it, but could work as a jewelry salesperson as the job was generally performed. (R. 61–62.)

The ALJ issued a written decision on January 20, 2022, finding Plaintiff not disabled. (R. 13–24.) Pursuant to the five-step sequential analysis outlined in 20 C.F.R. §§ 404.1520 and 416.920, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since April 30, 2020. (R. 19.) At the second step, the ALJ found that Plaintiff had the severe impairment of osteoarthritis of both knees. (R. 19.) The ALJ did not mention that Plaintiff was born with one ear or had impaired hearing.

At step three, the ALJ concluded that Plaintiff's impairment did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 20.) Before proceeding to step four, the ALJ assessed Plaintiff's RFC and determined that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: frequent climbing of ramps, stairs, ladders, ropes, or scaffolds." (R. 20.) The ALJ found there was no clinical or diagnostic evidence pertaining to Plaintiff's feet; no evidence of treatment for osteoarthritis of Plaintiff's knees since the alleged amended onset-of-disability date of April 30, 2020; and no evidence of any intense, persistent, or significantly limiting effects related to her knees. (R. 21.) The ALJ cited several treatment notes documenting unremarkable examinations, conservative treatment such as anti-inflammatory medications, and no restrictions on activities. (R. 21–22.) The ALJ found highly persuasive the opinion of Plaintiff's doctor, Emily Funk, M.D., who opined that Plaintiff had no limitations on lifting, carrying, standing, walking, sitting, pushing, pulling, balancing, kneeling, crouching, crawling, or stooping. (R. 22.) The only limitation opined by Dr. Funk was no more than frequent climbing of ramps, stairs, and ladders. (R. 22.)

With the above RFC, the ALJ concluded, Plaintiff could perform her past relevant work as a jewelry salesperson. (R. 23.) Consequently, Plaintiff was not disabled. (R. 23.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

**II.     Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ committed an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB and SSI, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). The disability, not

just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

### III. Discussion

#### A. The ALJ's Failure to Consider Plaintiff's Impaired Hearing Was Harmless.

Plaintiff was born without a right ear, as a result of which she has impaired hearing. (R. 374, 500.) Plaintiff argues that the ALJ erred by not deeming her hearing loss a severe impairment at step two of the sequential evaluation. Defendant responds that Plaintiff has not shown that her impaired hearing significantly limited her ability to do basic work activities, and thus, her impaired hearing is not a severe impairment.

At the second step of the sequential evaluation, the ALJ must "consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An "impairment . . . result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908. A "severe impairment" is a medically determinable physical or mental impairment that meets the 12-month duration requirement and significantly limits the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520, 404.1522, 416.920, 416.922. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Id.*

6

To be clear, the ALJ did not consider and determine at step two that Plaintiff's impaired hearing was not a severe impairment; rather, the ALJ did not consider Plaintiff's impaired hearing at all. An ALJ's failure to consider an impairment at step two is error. However, relief will not be granted if the error is harmless. *Gullett v. Soc. Sec. Admin.*, No. 3:21-CV-25, 2022 WL 1749843, at *4 (D.N.D. Mar. 28, 2022); *Polly O. v. Kijakazi*, No. 20-CV-1820 (ECT/ECW), 2021 WL 6297542, at *17 (D. Minn. Dec. 16, 2021), *R. & R. adopted*, 2022 WL 62083 (D. Minn. Jan. 6, 2022); *Misty G. v. Berryhill*, 18-CV-00587-KMM, 2019 WL 1318355, at *3 (D. Minn. Mar. 22, 2019). Some district courts in the Eighth Circuit have indicated that an error at step two can never be harmless, citing *Nicola v. Astrue*, 480 F.3d 885 (8th Cir. 2007). *E.g.*, *Moraine v. Soc. Sec. Admin.*, 695 F. Supp. 2d 925, 956 (D. Minn. 2010). Other courts—including this one—have held that an ALJ's failure to consider an impairment at step two is harmless error if the ALJ considered the effects of the impairment at step two or at a later step of the evaluation process. *Kendrick B. v. Kijakazi*, No. 21-CV-0068 (JFD), 2022 WL 2670052, at *4 (D. Minn. July 11, 2022); *see, e.g., Chapman v. Kijakazi*, No. 1:20-CV-125 PLC, 2022 WL 2064889, at *4, 6 (E.D. Mo. June 8, 2022); *Steel v. Kijakazi*, No. 21-CV-2105, 2022 WL 1696030, at *3 (W.D. Ark. May 26, 2022); *Gullett*, 2022 WL 1749843, at *3; *Polly O.*, 2021 WL 6297542, at *17; *Misty G.*, 2019 WL 1318355, at *3–4. A harmless-error analysis is appropriate when an ALJ arguably erred by not addressing at step two whether an impairment was severe or non-severe. *Misty G.*, 2019 WL 1318355, at *5.

This Court will follow the rule of its earlier decision in *Kendrick B.* and decline to grant relief on an error at step two if that error was harmless. The question, then, is whether

7

the ALJ's error was harmless. The Court concludes that it was. Several of Plaintiff's treatment records include computer-generated "problem lists," which include "Congenital absence of external ear causing impairment of hearing." (E.g., R. 374.) However, contemporaneous treatment notes do not indicate that impaired hearing affected Plaintiff's ability to do work activities or any other activities. (*E.g.*, R. 404, 500.) To the contrary, Dr. Funk and other providers consistently noted "hearing with no difficulties." (*E.g.*, R. 380, 389, 502.) Plaintiff has not identified any hearing tests that measured the degree of any hearing impairment. Plaintiff checked a box on a Function Report that her hearing was affected by having one ear, but she did not indicate that her ability to do basic work activities was affected by her hearing. (R. 324.) In July 2020, Plaintiff reported to a provider that wearing a face mask was adversely affecting her hearing at work, but she did not otherwise report hearing loss or indicate that her ability to do basic work activities was affected by hearing loss. (R. 404.) Plaintiff's provider suggested that she ask her employer to use a face shield instead of a mask. (R. 404.) Plaintiff did not testify at the administrative hearing that her hearing was impaired or that hearing loss affected her work activities. In sum, the record does not contain any effects of the hearing impairment that the ALJ could have included at step two or a later step. Thus, the ALJ's failure to consider Plaintiff's hearing impairment at step two was a harmless error.

Plaintiff's reliance on *David S. v. Saul*, No. 19-CV-1936-ECW, 2020 WL 5255281 (D. Minn. Sept. 3, 2020), is misplaced. In *David S.*, the parties did not dispute that the plaintiff experienced hearing loss; the "narrow issue" was whether the ALJ adequately accounted for noise limitations in the RFC. *Id.* at *1. The court remanded the case for

further development of the record concerning whether the plaintiff needed noise protection at work and how that would affect his ability to work. *Id.* at *3. *David S.* is inapposite for two reasons. First, the issue in *David S.* was the ALJ's assessment of RFC between steps three and four, not whether an impairment was severe at step two. Second, there is no indication in this case that Plaintiff would need a noise limitation at work or that hearing loss significantly limited her ability to do basic work activities.

### B. The ALJ Properly Assessed Plaintiff's RFC.

Plaintiff contends that the ALJ erred by not including standing and walking limitations in the RFC. As stated previously, RFC is the measure of the "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must consider all relevant evidence in the record, "including medical records, observations of treating physicians and others, and [the claimant's] own description of her limitations." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

Plaintiff argues that the ALJ disregarded her testimony about knee and foot pain. (Pl.'s Mem. Supp. at 13.) To the contrary, the ALJ acknowledged the testimony but found it inconsistent with clinical and diagnostic evidence, specifically the lack of a diagnosis for her feet and the lack of treatment for osteoarthritis or knee pain since the alleged onset date. (R. 21.) The ALJ acknowledged that Plaintiff could have residual effects of osteoarthritis, but the record did not support the claimed intensity, persistence, or severity of pain (R. 21.)

Plaintiff suggests the ALJ did not properly account for evidence that predated the alleged onset-of-disability date. As evidence of her knee pain, Plaintiff cites several treatment records from 2018, which predated the alleged onset date by more than a year.

(Pl.'s Mem. Supp. at 13 (citing R. 536–37, 539–40, 543, 545), Dkt. No. 12.) The ALJ also considered evidence that predated the alleged onset date, including x-rays showing only mild osteoarthritis, conservative treatment with anti-inflammatory medication, and no restrictions imposed by her doctors. (R. 21.) The ALJ again noted there was no evidence of treatment with an orthopedist that postdated the alleged onset date, and physical examinations after the onset date were normal. (R. 21.) The ALJ did not err in relying on treatment records after April 30, 2020, rather than records before that date, in concluding that Plaintiff had no walking or standing limitations.[4] Treatment records from the time period under consideration would be most relevant to Plaintiff's ability to walk and stand during that period.

Turning to other evidence, the ALJ found highly persuasive a February 2021 opinion from Dr. Funk. (R. 22.) On a Medical Source Statement form, Dr. Funk opined that Plaintiff had no restrictions with standing, walking, lifting, carrying, sitting, balancing, kneeling, crouching, crawling, or stooping. (R. 367–69.) Plaintiff's only restriction was climbing, which Dr. Funk opined Plaintiff could still do frequently. (R. 369.) The reason for the climbing limitation was bilateral osteoarthritis of the knees. (R. 369.) The ALJ's RFC assessment was consistent with the limitations opined by Dr. Funk.

The ALJ did not err in assessing the persuasiveness of Dr. Funk's opinion, as Plaintiff suggests. The social security regulations identify supportability and consistency as the two

---

[4] The differences between the treatment records predating and postdating the alleged onset date may also explain why the SSA previously determined that Plaintiff was limited to light work. Different evidence pertained to that period of claimed disability.

most important factors an ALJ should consider when deciding the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Other factors include the source's relationship with the claimant and specialization. Here, the ALJ articulated that Dr. Funk's opinion was highly persuasive because of the lengthy and established treating relationship with Plaintiff, consistency with diagnostic findings and unremarkable examinations, and supportability from the normal examinations after the alleged onset date. Substantial evidence therefore supports the ALJ's conclusion that Dr. Funk's opinion was highly persuasive.

## IV. Recommendation

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 11) be **DENIED**;

2. Defendant's Motion for Summary Judgment (Dkt. No. 17) be **GRANTED**;

3. The Commissioner's decision be **AFFIRMED**; and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.


Date: October 2, 2023                *s/ John F. Docherty*
                                     JOHN F. DOCHERTY
                                     United States Magistrate Judge


### NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written

objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days of being served a copy. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).